I actually have something pleasant to do. No, that's a joke. But I will first turn over to Judge Reina for a motion, or two motions. Thank you, Judge Prost. I have the honor of moving for the admission of two of my clerks, Alex Ruge and Sarah Gelsema. Can you stand, please? You know, time has gone by fast since the time that you've joined me in chambers, and they say that time flies when you're having fun, but I really think it flies even faster when you're working hard. And that's exactly what's been going on with you two. I think that the bar and the U.S. legal profession stands in really, really good stead, having both of you in the profession. And the court thanks you for the work that you've brought to the court. With that, Judge Prost, Judge Hughes, I move for the admission of Sarah E. Gelsema. She's a member of the bar, good standing, with the highest courts in Michigan and Utah. I have knowledge of her credentials, and I'm satisfied that she possesses the necessary qualifications. And I also move for the admission of Alex Ruge, who is a member of the bar and is in good standing with the highest court of Colorado and Illinois. I have knowledge of his credentials, and I'm satisfied that he possesses the necessary qualifications. Well, Judge Hughes and I are delighted to grant the motion. Why don't you stay put for a moment, and we'll have another motion, and then we'll do the swearing in. Judge Hughes. It's that time of year, I think, when we all unfortunately see our clerks move on to hopefully better and bigger things. But we're sad to miss them, so I also have a motion. Kyle has been with me for about 18 months, and he's been an outstanding clerk. And although, like I said, I wish him well, I'm also going to miss his hard work and his perseverance. So with that said, I move the admission of Kyle Canavera, who is a member of the bar. He's in good standing with the highest courts of Virginia and the District of Columbia. I have knowledge of his credentials, and I'm satisfied that he possesses the necessary qualifications. Again, I'm delighted on behalf of myself and Judge Wayne to grant the motion. So would you all please stand for the oath? Do you solemnly swear to affirm that you will comport yourself as an attorney and counselor of this court, upright and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations. Congratulations, all. I'll turn it to the business at hand. Case 15-1997 and 16-1000, DACO Denmark versus LECA Biosystems Melbourne. We've combined both of these cases for argument, and I appreciate the cooperation of the parties in that regard. Mr. Green? Thank you, Your Honor, and may it please the Court. I am Jack Green representing DACO. I'm here today with Bradford Schmidt, the Chief Intellectual Property Counsel of Agilent, the parent company of DACO. These two cases are before you on appeals from inter-parties reexaminations. Those reexaminations began after my client sued LECA for infringement of the two patents at issue. That infringement case was stayed, and reexamination proceedings began. Now, I submit this case is worthy of special attention for at least a couple of reasons. First, a number of pieces of objective evidence indicate that the Board did not properly weigh both the secondary considerations, as well as the art itself, when it did the analysis that it did. And that analysis is predicated on so-called common-sense considerations that we submit were hypothesized by the examiner and adopted by the Board in direct contradiction to sworn expert evidence submitted by my client. That evidence by Dr. Floyd is undisputed, and it directly undercuts, and we say goes away from, the so-called motivation to combine or to modify, which underpins the decisions in the case. Okay, so let's look at the prior art references. You've got Sung and you've got Muller, both in the same field similar, talking about what you're talking about in your patent. What is the problem with the Board's conclusions on motivation to combine? The Board misread Sung. Sung does not teach what the Board said it does. Only in hindsight can you say that Sung teaches individually heeding slides. If you look at Sung, and I ask the Court to look at the quoted material, you will see in context... What do you mean by individually? That it doesn't heed them one at a time? That's right, Your Honor. So that's not what the Board relied on Sung for. The Board relied on Muller for that. Well, the Board relied entirely on Sung in one of the two appeals for that teaching. My point is that Sung teaches only batch heeding. It never teaches individual heeding of slides. I know we consolidated these, but it might be helpful to us if you talk about which patent you're talking about. Thank you, Your Honor. Because in one of them, they didn't rely on Sung solely for individualized heeding. They relied on Muller. That's correct, Your Honor. And are you talking about the 392? Well, I'm making a point I think that applies to both, which is that the Board misread Sung's teachings. And so it cannot rely on the prior art to find the teachings that are directly contradicted by the Floyd Declaration. Okay, now I'm confused. Let's talk about the 392 patent first. Okay, talking about the 392 case. In that case, the Board combined Sung, which we submit teaches... But didn't it rely on Muller for teaching the desirability of heeding individual slides at different temperatures for staining procedures? Didn't it rely on Muller for that? It did rely on Muller for that teaching, Your Honor, yes. And we submitted that there would be no motivation to modify the primary reference to heed individual slides, because if you look at the art and you look at the context of Sung, which we admit has all the other elements, there would be no motivation to modify. I find your argument interesting, but let me ask you this question. Would a person skilled in the art take Sung and say, okay, I can heed multiple slides. I'm going to use this to heed only one. We would say no, Your Honor, because if you look at Sung in its introduction, it talks about automated processing of large numbers of slides. That's what we refer to as... My question is, why do you need Muller? Why is Muller necessary at all in order to support the Board's finding? It seems if you have a device or the apparatus here that heeds multiple slides, why is it standing alone? It wouldn't be enough to say, well, maybe I can build one that heeds only one. Because the whole purpose of Sung is high throughput batch processing of slides in a laboratory context. That is taught, is explained in detail by the Floyd Declaration. We submit the Board improperly ignored that evidence. Even Sung, it teaches heeding different rows of slides at different temperatures. You agree that it shows heeding different rows. If you only put one slide on each row, it's heeding one slide to a certain temperature. Your Honor, respectfully, that's exactly the improper hindsight that the Board engaged in. At the time of the invention, there was no teaching to do these slides one at a time. Except for Muller. Yes, but Muller didn't have any of the other elements of the claimed invention. It's not an open air stainer, which is required by the claims. But it's also not an anticipation rejection. In an obviousness context, you're always going to combine two references. Yes, Your Honor, you are. But in order to do that, you need to have a motivation to do it. If the Sung is used for multiple slides or commercial use, in my mind, I'll start looking at commodity purposes. Just a whole lot of slides being heated at one time. But then there's this outstanding need for maybe heating and staining slides in a very complex application. Then why, in that situation, why wouldn't somebody look at Sung and say, gee, I need to have not many, just some or one. Why wouldn't they look at Sung and say, I can take this and just create something that heats one slide? Because there was no type of staining that would have required that. The Floyd Declaration teaches and explains in detail market and technical reasons why a person of skill would not have thought that combination would work. This appeal really, I think, has as its most important point, the fact that the board is using hindsight common sense to remake Sung in the 672 appeal and to make up a combination with Sung and a totally different type of machine, which does happen to have individual slide heating, in order to come up with the claimed invention. But the Floyd Declaration teaches why that combination would not have happened. Now, I know sitting here, you think, but of course, well, that's hindsight. And not only do we have the Floyd Declaration, we have two pieces of objective evidence that, as you know, the Supreme Court has endorsed as part of an obviousness analysis, showing real life reasons why this combination would not have been made. The first is copying. So we submitted a declaration from one of the inventors, Dr. Bogan, who testified that he knew of Ventana's machine, which copied. Now, Ventana, as you know from the brief, boasted about their copying of the claimed invention, which they got access to through a security service. And talked about it and discounted it for a variety of reasons. And that was the only secondary consideration you pressed the board with, right? Well, to take your questions one at a time. So the reason it was improper to discount that was, one, Dr. Bogan put in a sworn declaration, based on his personal knowledge, saying it had been copied. The board should not have been allowed to disregard that. Well, maybe it's just a question of terminology. I don't read the board as disregarding it. They considered it and they decided it wasn't significant enough to overcome the prima facie finding of obviousness. They didn't disregard it. They didn't say, no, this is absolutely, completely irrelevant. We're not even going to think about it. They didn't do that at all. Your Honor, we think that if you read the board's decision, and then you look at the language they used in discounting, we say improperly discounting the Floyd declaration, they said we're discounting it because it's not dispositive. Well, that's not the standard. Why don't we look at, do you have the site for where the board dealt with the secondary consideration? Yes, Your Honor. So this would be, this citation is to the 392 appendix and briefs. The same material is in both. If you look at appendix 23, which is page 22 of the decision in the 392. What was that page again, counsel? That's appendix 23, so that's actually attached to the main brief in the 392 appeal, which is the 1997. I'm sorry, page again? It's the board decision at page 22, which is appendix 23 in our blue brief on the 1997. And so we think they violated the Supreme Court's requirements with respect to consideration of objective evidence, when they required that this copying evidence be dispositive in order to overcome what we submit as a Heinstein reconstruction of the prior art. Supreme Court teaches... That's why they didn't think that evidence was sufficient to show copying. I understand, Your Honor, that they first looked at the technical issues and then they looked at the secondary considerations. We think that the use of this word dispositive suggests that they didn't do it right. Can't you read dispositive fairly to say they're looking at the initial findings with regard to motivation and they're saying, okay, and what have we got for secondary considerations? And they say all we've got is copying and we discuss copying and we say it's not dispositive. In other words, it doesn't mean that we are now therefore going to say there's a non-obvious misdetermination. Why wouldn't they have used the word dispositive? They were talking about, okay, you wanted them to say that the copying is so substantial and so significant and so overwhelming that it overwhelms the rest of the case regarding obviousness. Your Honor, my point is that they used dispositive, which isn't the standard. What is the standard? Well, all of the four factors in the Graham factors have to be weighed and we think equally. That's what your precedent teaches in the Henry Sullivan case. But you didn't put on evidence of other secondary considerations. Well, Your Honor, we did. We cited an article that came out around the time and what that article teaches is that there is a need to modify SUNG for automation of special stains. And then it teaches a different solution to that. So that article is teaching a different solution than the one that the inventors came up with, which is individualized slide heating in an open air structure. And we think that corroborates and supports our point that you can only do this combination of art or modify SUNG in the 672 appeal if you do it in an open air structure. In hindsight, because at the time of the invention, persons of skill were being taught a different solution for this problem, which is automation of special stains. And so we think the board... The board treated the secondary considerations the same in both cases, so my argument applies to both. In both cases, the board, using almost exactly the same words, improperly discounted the weight of the copying evidence. But your problem is they didn't find copying altogether. I mean, the sentence you're pointing to is an alternative view that even if they had copy, which the board spent four pages explaining why there wasn't a preponderance of evidence to show copying. I mean, which we review that for substantial evidence, don't we? Well, you do review their weighting of the evidence for substantial evidence. So if there's no copying, then this whole sentence about dispositive goes out the door. So you think their conclusion on copying lacks substantial evidence? Yes. Yes, I do. And that's because there's a sworn declaration from a person of knowledge saying there was copying. And we cited two cases... Yeah, but you don't win just because you put in a sworn declaration. The board went through and explained why they didn't find that declaration particularly convincing. It went through a bunch of other facts about the case and said, on the whole, the preponderance suggests no copying. Well, Your Honor, we think if you look at the declaration and you look at the cases that say that a sworn declaration establishing a fact in the absence of any contrary evidence can't be disregarded by the board or a court. It wasn't disregarded. They considered it. They rejected it. There's a difference. You want to go on before your time runs out? I know we've been flipping back and forth on these patents, but I guess there are sort of other arguments with regard to... Yes, Your Honor. I see I'm approaching the end of my main time, so I'll reserve my full five minutes for rebuttal. Unless you want to extend the time for argument. No, I don't think we're going to do that. Good morning. David Mangum on behalf of Leica Biosystems. May it please the court. The board's decisions here are supported in every respect, as the question is brought out. With regard to the 392 patent, we have a combination of references that are in the exact same document. They deal with automated staining. This court in Icon Fitness, for example, combined references from very divergent fields, a treadmill and a Murphy bed, essentially, to put together a finding of obviousness and uphold the finding of obviousness. What's the substantial evidence to combine Sung and Mueller? It's in the references themselves, Your Honor, and particularly with regard to the Sung reference, the appendix at page 8A707, column 2, lines 21 through 31 of the Sung reference. It states, further developments that allow individual slides to be treated differently in a single batch operation, and that provide an automated procedure that uses reagents efficiently, remain needed. In the summary of the invention, it continues on, it is an object of the invention to provide an automated staining apparatus that is readily programmable to allow automated staining of individual microscope slides with different techniques. Then Mueller is talking about the same thing. With due respect to my colleague here, the notion that you have special staining or ISH procedures, and you have immunohistochemical, IHC, and that the two never meet, is really trying to put blinders on the one of ordinary skill in the art. Here, it's undisputed that one of ordinary skill in the art has a master's degree in biochemistry, has years of experience in the field, and the notion that we have two reference here, that both deal with automated staining apparatus, both talk about their application in IHC and ISH, not limited, the teaching to combine, and the substantial evidence that supports it. I find some credibility in your opponent's argument. If some teaches, for example, if some teaches that you can have a special staining that the patent undertakes, that you can achieve that using some, am I correct in that? Some does not limit itself. But it can be used for special staining. So if you have an apparatus that does many slides, but can also do one, what's the motivation to say, aha, I'm going to build a machine that only does one? The language that I just read from the Sun reference, where it talks about the desirability of treating these slides individually, and then, of course, with Mueller that provides that exclusively. But with Sun, you can already do that. Correct. What's the motivation then to say, let me invent something that only does one slide? Well, and I think the proper question there is to create something that has the capability of performing only one slide, and one of skill in the art would be obvious to how to modify the apparatus so that it only treated one by eliminating those additional raised areas. But both of the references, and Sun specifically, and this is at A714 in the appendix, specifically says, it will be apparent that the apparatus and method of the invention can be used in any staining technique that can be carried out manually, and that there are no limitations placed on the invention by the staining technique. So we have the two references talking about in a very closely related field. How critical is the Mueller reference to the board's decision? Well, looking at shifting to the 672 patent, the fact that the board also found that the 672 patent, if interpreted the way that DACA wants it interpreted, would have been obvious based upon Sun alone. We feel, and that's why we argued alternatively in our brief, that you can affirm the board, based upon Sun alone, because of the very language I read that talks about, has a teaching of these individual slide techniques, individual slide stain. So that's where the support in the record comes for this, and the person of ordinary skill clearly has the skills in order to make this combination. Now one thing I did want to address, because it comes up frequently with regard to the notion of special stains and high throughput. DACA's argument is inappropriately looking at factors, and indeed the Floyd Declaration is entirely talking about factors or motivations that are not within the claims. They're not within the claim scope. This court in ICON Health and Fitness noted that ICON's argument may have carried some weight with more narrow claims, but faced with broad claims encompassing anything that assists in stably retaining the tread base, we reject ICON's argument. So you can't try to suggest that there's no motivation to combine by relying on things that are extraneous to the claims of the patent. You look at the patent claims to decide what renders it obvious, and arguing things like high throughput, which there's no limitation in the sung reference about high throughput, no limitation in either of the patents in suit about high throughput. We also cite in the brief the Smith and Nephew versus Ray case that says, an unclaimed and undisclosed feature cannot be the basis for finding the patent to be non-obvious over the prior art. So directly on point here, and that's why the Floyd Declaration simply carries no weight with regard to criticism of the board and its findings being supported by substantial evidence. And I would just point out to the court there's been a post-briefing decision that really goes right directly to this. It's the Illumina Cambridge versus Intelligent Biosystems case. It was decided, it's a slip opinion, from January 29, 2016. I will note it's a non-precedential case, so I only offer it for its persuasive weight. But in that case, Illumina challenged the board's refusal to enter substitute claims, finding the unpatentable as obvious in light of the prior art. And what they did was argue, essentially what DACA was arguing here. They said, we have an expert declaration that one of skill in the art would not have been motivated to combine these prior art reference because of the low cleavage efficiency taught by the prior art. And Judge Lori wrote in rejecting that argument, although Illumina provided an expert declaration stating that the prior art did not provide an expectation that disulfide cleavage conditions would cleave a protecting group with greater than 90% efficiency, the claims also do not require that the protecting group be cleaved at greater than 90% efficiency, much less that the linker also be cleaved at such efficiency. So you simply can't criticize or argue that one of skill would not have been motivated based upon things that are outside the scope of the claims. What we're looking at is the obviousness of the claims. Now there was also a reference about what the purpose of Sun was, or what the purpose of the inventor was. And the KSR decision from the Supreme Court tells us explicitly that in determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the about purpose of the patent he controls. What matters is the objective reach of the claims. So we look at the references, we look at the objective reach of the claims, and here I'd submit the Board's decisions are correct, but they are certainly supported by substantial evidence. I did want to bring just one more post-briefing decision to the Court's attention. Did you submit a 28J letter? That's typically the way we do it, so that your colleague will have noticed and be able to respond. So I suggest that that would be the more appropriate court. These are not cases that apply any different standard or different law. Then why don't you deal with the cases you said in your brief? Okay, I appreciate that. We have more than adequate support with regard to the notion that when you're combining references, that they don't have to be physically combinable, and that was all that the Allied Erecting Decision talked about as well. That as long as it would teach one of skill in the art, the combination that that is sufficient. So to turn then briefly just to what you addressed with my colleague here, with regard to the objective indicia of non-obviousness. This isn't like the Cyclobenzadrine case or the Plantronics case, where the lower tribunal did not address and did not deal with the evidence of objective indicia. Here, as Judge Hughes pointed out, the board went through in some detail what the offered evidence was, and simply found that it was not sufficient to prove copying. And again, the standard of review here is that conclusion, that finding by the board supported by substantial evidence in this case, clearly it is. I would just address, counsel was alluding to the Bogan Declaration, but what the board did and pointed out in its analysis is that there simply was no support in that conclusory declaration by the inventor that he had any personal knowledge about Ventana or its device. And when we pointed out that fact in the reply brief, the only response was, well, he was working in the field during the same time that Ventana was out there, and I submit that's not sufficient evidence to show personal knowledge of someone about the structure of a competing device. And that was, as Chief Judge Post pointed out, the only evidence with regard to objective indicia. The subsequent article was not pointed to be showing of a long-felt need or failure by others. It was used in support of the complexity argument and not an objective indicia argument. So with that, I'll turn to the 672, Pat, unless there's some questions with regard to the 392. With regard to the 672, the board's decision should be affirmed on both of the grounds that it reached. Its claim construction is entirely appropriate. It follows the expressed language of the claim at issue. Claim one is modified by claim two. There is no requirement in those claims that each slide support have its own individual heating element. Well, in claim one, at least, it describes the slide support as, quote, being comprised of a heating element. So why doesn't that suggest that a heating element belongs to only one slide support? Because it is expressly talking about the notion that you can have a heating element that underlies multiple slides and multiple slide supports. DACA's argument is that they suggest that there's somehow a one-to-one-to-one comparison here that is set up. In fact, there is the notion of a slide support in claim one. The slide support can have multiple slides on it, and then claim two modifies the slide support. Is that the case, that a slide support can have multiple slides on it? Because most of the visuals we saw was that every individual slide had its individual slide support. Well, it depends on how you look at figure five in the patent. If you look at figure five where it shows five slides that are seated there, if you look at the entire selection of five slides and you say that that one structure that has the five slides on it is a single slide support, then yes, there's that disclosure, and there needs to be, because there are claims that talk about slides having... The claim says that the slide support has at least one. So there is support in the specification that you can have a slide support that has multiple slides. If you look at the slide support and say, no, the slide support is just the cavity in which the one slide is, then... But then we're looking at claim two, which clearly says each slide support accommodates only one slide. Correct. But that modifies the slide support. It doesn't modify the heating element. The way this claim is drafted, the different slide supports could share a heating element. So you could have separate slide supports, but they each have part of the heating element. The other thing that's critical here and what the board said and relied on is we're dealing here with a family of patents. This one specification supports a series of patents, including the two patents that are before this court. And there are claims, claim seven of the 392 patent is one example, that do have heating elements that have only one slide. But this claim does not do that. And we clearly have a situation where the patentee knew how to express its intent that a heating element only heat one slide. And it did it in various other claims, but didn't do it with respect to this one. And I guess the other response I'd have for your honor too is that language like comprised and comprising is non-limiting. It's inclusive of other things as well. So we believe that the board's decision and claim construction is appropriate. And once that's established, DOCO acknowledges that under that claim construction, the conclusion and finding of anticipation is clearly correct. And then with regard to the obviousness, it's again the same points that Sung does teach, one of skill in the art, that the use with individual slide treatment for the reasons that I've already discussed. If there aren't any further questions, I'll cede the remaining of my time. Thank you, your honors. Three points to make in response. First, counsel quoted and cited from Sung several times. All of those citations focused on individual staining. If you look at the disclosure for heating, all of that disclosure is in the context of block heating. Sung teaches a laboratory device that permits individual staining and then block heating and does not have any internal teaching to heat individual slides. And if you look at the text surrounding those citations that he gave you, you will see that, particularly in column two. In our briefs, we cite a case, INRAE-COW. That case stands for the proposition that this court should reverse where the board has not given proper weight to an expert declaration. In that case, the board reversed an obviousness finding because a declaration established nexus and the board said it did not. That is the case here, your honors, with respect to Dr. Bogan's declaration and his personal knowledge that Ventana copied the claimed device. It also supports our point with respect to Dr. Floyd's declaration. The board's treatment of that declaration was cursory and dismissive, and it did not give proper weight to the uncontradicted sworn testimony of someone of skill in the art showing there was no motivation to comply. Can I just stop you on, Coe, because in your site, you have a parenthetical that says that the determination, vacating the board's determination, the invention was obvious when the board disregarded and discounted secondary considerations and stating that when secondary considerations are present, though they are not always dispositive, it is error not to consider them. That is, again, whether or not they considered the secondary considerations, right? Well, that case, actually, if you look at it, and I had an opportunity just before this argument to refresh myself on its facts, it stands for the deeper point that this court should reverse where expert testimony has not been properly considered, and that is what the court did in the Cowe case. What do you mean properly considered? I mean, the board wrote in detail why it wasn't accepting these declarations. You just disagree with it, but that doesn't make it improper. What else would you have the board do if they don't believe in the validity of these declarations? Is there more they can say? They went through all of them and said, here's the reasons we're discounting this, here's the reasons we're discounting that. And I would respectfully submit the board does not have the right to discount uncontradicted sworn testimony in these proceedings, and that's what they did. They just refused to believe uncontradicted facts, and that's improper, and then they substituted their own common sense, which I submit is improper. The third point I want to make is to sum up what we see as the totality of errors here that show that this case and these invalidity decisions are based on hindsight. I'm sure you hear the word hindsight a lot in these arguments, but here we have five different reasons why hindsight led to the erroneous result. The board misread some. It does not teach individualized heeding. The board discounted the copying evidence in the sworn and uncontroverted declaration of Dr. Bogan. It ignored an article teaching a different solution was what people of skill were being led to at the time of the invention. It substituted a hindsight technical capability for combination with the legally required motivation to combine, and it hypothesized this common sense modifications of the art, which were contradicted by Dr. Floyd. Unless there are further questions.